OPINION OF THE COURT
Joseph J. Sedita, J.
The intentions of divorcing parents encapsulated in a written agreement over a half century ago is at the crux of the controversy now before this court.
*434 In 1936 the defendants’ decedent entered into an agreement with his wife incident to their divorce. The relevant portion of that agreement states: "The said Hazel S. Block and the said Adrian Block do hereby agree with each other and with their respective children as follows: That except for the expenses and disbursements of the respective parties hereto paid and made during the respective lifetimes of the parties hereto for the support, maintenance and education of their said children, as hereinbefore set forth and except for gifts of reasonable current spending money and of articles of jewelry personal adornment personal effects furniture automobile house and household effects made during the respective lifetimes of the parties hereto the said Hazel S. Block and the said Adrian Block will not discriminate between their said children. That except as aforesaid each of the said children shall be treated equally, both as regards gifts during the lifetime of the respective parties hereto and bequests and devises by will, each of the parties hereto agreeing that he or she will not, except for the gifts hereinbefore specifically set forth, in his and her respective lifetimes, give money or property real or personal, to one child without giving money or property, real or personal, in an equal sum and amount to the other and that he and she will not, by his or her Last Will and Testament, give, bequeath or devise money or property, real or personal, of a greater value and amount to one of their said children than to the other.”
The defendants seek a dismissal of the first cause of action in this lawsuit. Said cause of action seeks an accounting and enforcement of the "equal gifts” portion of the agreement. Plaintiff is the daughter of the decedent and seeks enforcement as a third-party beneficiary of the agreement. The defendants assert that any possible enforcement of the agreement is barred by the applicable six-year Statute of Limitations. (See, CPLR 213.)
Defendants note that plaintiff’s brother died on January 20, 1982. Defendants claim that any "inequality” in gifts would have been established on that date and that the Statute of Limitations should run from that date. Using this analysis, the present lawsuit would have been commenced after the Statute of Limitations had run.
Plaintiff responds to defendants’ analysis by noting that the agreement was to be performed during the "lifetimes” of the signatories and that the decedent could have offset any possible imbalance in gifts by gifts to the plaintiff daughter any *435 time prior to his death. Since he could have satisfied his obligation (if any) up until his death in 1988, there could be no basis for any alleged breach up to that time, and the Statute of Limitations would run to at least 1994 (1988 + six years).
This court has found no statute or precedent which clearly deals with a situation such as this. To this extent it is a case of first impression.
The narrow issue then is, at what point, under the facts of this case, could the last possible breach of this agreement (if any) be considered to have potentially occurred, and the Statute of Limitations begun to run?
To begin our analysis, we note that the words of a contract should be given their ordinary meaning (so long as nothing in the contract suggests a different meaning), and no unreasonable or absurd results should result from the interpretation. The words should be given the meaning which best effectuates the intentions of the parties. (See, 22 NY Jur 2d, Contracts, § 210.)
Let us now review the words of the parties to see if their intentions can be better understood as an aid to our analysis.
The real thrust of the relevant language is directed at the avoidance of "discrimination” and the assurance of "equal” treatment of the two children.
Webster’s New Twentieth Century Dictionary (unabridged, 2d ed) defines the word "equal” as "of the same quantity, value * * * having the same rights, privileges * * * evenly proportioned; balanced or uniform in effect or operation * * * impartial * * * not biased, fair”.
The interpretation urged upon this court by the plaintiff would read this agreement and the intention of the signatories as allowing gifts which were equal in quantity, but unequal in time of reception. The plaintiff would have us believe that the signatories were agreeable to the possibility of one child receiving a certain gift of money or property and the other child receiving their "equal” gift perhaps 50 years later.
This court cannot believe that this is a reasonable construction of the intention of the parents. Just as "justice delayed is justice denied,” a gift 50 years in the future is simply not equal to a similar gift in the present. One does not have to be a mathematician to appreciate the difference in value between $100 in 1939 and $100 in 1989. Gifts not reasonably coterminous in time as well as amount are simply not equal. Gifts not *436 reasonably coterminous in time clearly discriminate against the one receiving the later gift.
We conclude, therefore, that the intent of parties to this agreement was to commit themselves to gifts both equal in value and reasonably contemporaneous in time. A contract which sets no exact time for performance is construed as implying a reasonable time. (22 NY Jur 2d, Contracts, § 244.)
The next relevant consideration is, of course, what is a "reasonable time” within the context of the expressed intention of the signatories. Ordinarily the question of what is a reasonable time is one for a jury unless the facts are undisputed. (22 NY Jur 2d, Contracts, § 245.) In our case both signatories are deceased, and the writing was executed over 50 years ago. The facts as to the content of the agreement are not in dispute. This is solely a matter of legal interpretation for this court to resolve.
The language of the agreement refers in relevant part of gifts "in an equal sum and amount” (para No. 10 of the agreement). This language would seem to imply that the primary type of "gift” envisioned was monetary.
A promise to pay money which is silent as to exact time of payment has been interpreted to mean immediate payment. (See, 1 Williston, Contracts § 38, n 5 [3d ed]; Bradford, Eldred & Cuba R. R. Co. v New York, Lake Erie & W. R. R. Co., 123 NY 316; Swedish-American Natl. Bank v Merz, 179 NYS 600.) Money or property not received till a few months after the other sibling received a gift would involve some limited discrimination, but a gift or money delayed an entire year would surely be discriminatory and unequal simply taking into account lost interest on the money.
Our conclusion, therefore, is that the intention of the signatories was to require gifts substantially contemporaneous in time as well as amount. We conclude that a gift pursuant to the agreement which was given one year after the other sibling had been "gifted” would be inherently discriminatory and in violation of the agreement.
In our case the last opportunity for the decedent to give a gift to his son was just before his death in January of 1982. Any breach by nonperformance of the "equal gift” provision would have to have taken place by January of 1983. If the plaintiff had not received any necessary equalizing gift by then, the agreement would have clearly been breached as to the implicit requirement of reasonable equality in the timing of any such gift.
*437 Since any such breach would have surely taken place by January 20, 1983, this cause of action would have had to be interposed at least prior to January 20, 1989. This lawsuit was commenced on January 31, 1989 which is over six years after any possible breach would have occurred (under our analysis supra).
Let us note in passing that the claims of plaintiff appear to be extremely speculative, and we have assumed (for purpose of this motion only) the enforceability of the agreement in question. Plaintiff has not come forward on this motion with any information by which a court could conclude that there had been unequal "gifting” in violation of the agreement. Defendants, on the other hand, have produced affidavits which assert a lack of any basis for this claim of unequal gifting.
Accordingly, defendant’s motion to dismiss the first cause of action is granted. The application to require the posting of a bond is denied at this time without prejudice.